**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3849-15T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JOSUE SERRANO-TORO,

    Defendant-Appellant.

_____

Submitted May 9, 2017 - Decided May 24, 2017

Before Judges Sumners and Mayer.

On appeal from the Superior Court of New
Jersey, Law Division, Monmouth County,
Indictment No. 15-02-0252.

Joseph E. Krakora, Public Defender, attorney
for appellant (Laura B. Lasota, Assistant
Deputy Public Defender, of counsel and on the
brief).

Christopher J. Gramiccioni, Monmouth County
Prosecutor, attorney for respondent (Alissa
Goetz, Assistant Prosecutor, of counsel and
on the brief).

PER CURIAM

Defendant Josue Serrano-Toro appeals from his conviction for third-degree possession of a controlled dangerous substance, N.J.S.A. 2C: 35-10(a)(1). His appeal focuses on the court's denial of his motion to suppress evidence of drugs found in his vehicle. Defendant contends he did not consent to the search of his vehicle, and the inevitable discovery rule did not apply. We disagree and affirm.

We recite the facts relevant to defendant's contentions on appeal. The State presented evidence that a Wall Township police officer was in a marked patrol car with his K-9 partner on November 13, 2014. On that date, police officer Emmett Idzahl observed a BMW with tinted front windows. Because tinted front windows are a violation of the State's motor vehicle code, Officer Idzahl ran a computer search on the vehicle's license plate, which confirmed defendant was the registered owner of the vehicle and that defendant's driver's license was suspended. Consequently, Officer Idzahl activated his lights and requested defendant, who was driving the vehicle, pull over to the side of the road.

Officer Idzahl approached defendant's car and smelled marijuana. While requesting defendant's driving credentials, the officer observed defendant was shaky and nervous. Specifically, Officer Idzahl noted defendant's eyes were bloodshot and watery.

2

Based on his observations, Officer Idzahl requested backup support. Sergeant Jason Costantini responded in a vehicle equipped with a dashboard video camera, which was used to record the interaction between the police officers and defendant.

Based upon his observations, Officer Idzahl asked if defendant would consent to the search of his vehicle. The request to search the vehicle was premised on the smell of marijuana, defendant's nervous behavior and body language, and defendant's bloodshot eyes. While defendant denied having drugs in the vehicle, he admitted smoking marijuana earlier in the day. Both police officers explained to defendant that a search warrant could not be obtained for at least four days.[1] The police officers further explained that if defendant consented to a search of his vehicle and nothing was found, defendant could leave. After

---

[1] Prior to defendant signing the consent to search form, Sergeant Costantini explained that obtaining a search warrant would take approximately four days due to vacation and staffing issues, and the vehicle would be impounded in that case. Defendant unequivocally voiced his desire to avoid impounding the car. Because defendant's driver's license was suspended, even absent finding suspected contraband, the vehicle may have had to be impounded if defendant was unable to arrange for someone to drive his vehicle home.

Judge Mellaci expressly found that the officers' comments about the length of time it would take to obtain a warrant and where the vehicle would be located while a warrant was obtained were not said "as a way to subvert [defendant's] will to consent." Judge Mellaci ruled that the officers' statements were "just a statement of facts."

considering the options defendant consented to a search of his car.

Officer Idzahl reviewed the consent to search form with defendant. The dashboard video camera in Sergeant Costantini's vehicle recorded the proceeding with defendant's knowledge.

After the search commenced, defendant asked whether he could stop the search. Sergeant Costantini explained that the search could be discontinued, but the vehicle would be impounded while an application was made for a search warrant. Despite this information, defendant never asked the officers to cease searching his vehicle.

Upon searching defendant's vehicle, Officer Idzahl found suspected cocaine, a burnt marijuana cigarette, and nine "decks" of suspected heroin. The officers then stopped the search to impound the car and obtain a search warrant. Defendant was arrested.

Defendant moved to suppress the drug evidence at trial. Judge Anthony Mellaci, Jr. conducted the suppression hearing. At the hearing, the State's evidence consisted of the testimony of Officer Idzahl and the dashboard camera video. After considering the evidence, Judge Mellaci denied defendant's motion.

In an oral decision, Judge Mellaci made extensive fact-findings based upon his review of the evidence. Judge Mellaci

concluded that the State satisfied its burden of demonstrating probable cause to search the vehicle based upon the smell of marijuana and Officer Idzahl's observations regarding defendant's appearance. Based on this determination, Judge Mellaci also ruled there was a reasonable and articulable suspicion of contraband supporting the officers' request for consent to search the vehicle.

In his ruling, Judge Mellaci found the State proved, by clear and positive testimony, that defendant's consent to search the vehicle was knowing and voluntary. Judge Mellaci determined that defendant's will was not overborne and that defendant "knowingly and intelligently and voluntarily, signed the consent form to search despite the comments of the officers." Judge Mellaci found defendant understood his right to refuse to consent to the search and the available options if he did not consent to the search.

In reviewing the video recording, Judge Mellaci noted defendant and the officers were calm and "matter of fact." In the video recording, it appeared to the judge that defendant was aware the car would be searched, and hoped the drugs would not be discovered during a brief roadside search. Because defendant was not under arrest when he consented to the search of his vehicle, did not refuse consent prior to giving his consent to search, and was not threatened by the officers stating they would seek a warrant, the judge determined the State proved the voluntariness

of defendant's consent to search the car. Additionally, he stated the consent to search form was read to defendant in its entirety, and defendant was advised that he could refuse to consent to search the vehicle. Moreover, the judge found defendant's signature on the consent to search form negated any argument of coercion.

Judge Mellaci rejected defendant's argument that the officers' statements were intended to coerce his consent to search the vehicle. He concluded the officers' statements to defendant were factually accurate and not designed to "subvert [defendant's] will to consent."

Because Judge Mellaci concluded defendant's consent was voluntary, he denied the suppression motion. The judge also ruled that even if defendant's consent to the search was not voluntary, under the inevitable discovery doctrine, the drugs would have been found during a search conducted pursuant to a search warrant.

On appeal, defendant asserts the following arguments:

> POINT I
>
> BECAUSE DEFENDANT DID NOT GIVE VOLUNTARY CONSENT, THE SEARCH OF HIS VEHICLE VIOLATED THE FOURTH AMENDMENT AND THE FRUITS OF THE SEARCH MUST BE SUPPRESSED.
>
> POINT II
>
> THE DRUGS WERE INADMISSIBLE BASED ON THE INEVITABLE DISCOVERY DOCTRINE BECAUSE THE STATE FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT A VALID SEARCH

> WARRANT FOR THE CAR WOULD HAVE BEEN
> GRANTED.

In reviewing a motion to suppress evidence, we defer to the factual and credibility findings of the trial court, "so long as those findings are supported by sufficient credible evidence in the record." State v. Handy, 206 N.J. 39, 44 (2011) (quoting State v. Elders, 192 N.J. 224, 243 (2007)). "[A]n appellate tribunal must defer to the factual findings of the trial court when that court has made its findings based on the testimonial and documentary evidence presented at an evidentiary hearing or trial." State v. Hubbard, 222 N.J. 249, 269 (2015). We accord deference to the trial court "because the 'findings of the trial judge . . . are substantially influenced by his opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. Reece, 222 N.J. 154, 166 (2015) (quoting State v. Locurto, 157 N.J. 463, 471 (1999)).

Because the trial judge's ruling was based, in part, upon the video recording from a dashboard video camera, we set forth the standard of review governing video recordings. While an appellate court may view the same video recording as the trial court, an appellate court may not substitute its evaluation of the video recording particularly where the trial court's determination on

the motion is also based on the judge's opportunity to hear and consider live testimony. Elders, supra, 192 N.J. at 244-45.

We find ample support in the record for Judge Mellaci's finding that defendant's consent to search his vehicle was "unequivocal, voluntary, knowing, and intelligent." State v. Sugar, 108 N.J. 151, 156 (1987). First, Judge Mellaci concluded that the State proved a "reasonable and articulable suspicion" of criminal activity justifying the search of the vehicle based upon the smell of marijuana and defendant's appearance. See State v. Carty, 170 N.J. 632, 647 (2002), modified, 174 N.J. 351 (2002). Next, Judge Mellaci found defendant's consent was "knowing" as defendant was told more than once that he had the right to refuse to consent to the search of his vehicle. See State v. Johnson, 68 N.J. 349, 354 (1975); State v. Crumb, 307 N.J. Super. 204, 243-44 (App. Div. 1997), certif. denied, 153 N.J. 215 (1998). Judge Mellaci also determined defendant's consent was unequivocal as the consent form was read aloud to defendant before he signed the document. Carty, supra, 170 N.J. at 639. Lastly, Judge Mellaci did not find the officers' statements to defendant were coercive. See State v. Cancel, 256 N.J. Super. 430, 434 (App. Div. 1992), certif. denied, 134 N.J. 484 (1993) (coercion not found unless the explanation of the choices available were "a deceptive threat made to deprive [defendant] of the ability to make an informed

consent."). Judge Mellaci specifically found the officers' statements were factually accurate descriptions of the options available to defendant.

In addition to testimonial evidence, Judge Mellaci viewed the video recording in ruling that defendant's consent to search was voluntary. See State v. Diaz-Bridges, 208 N.J. 544, 565 (2012). Judge Mellaci observed that defendant was calm when the officers requested his consent to search the vehicle. It appeared to the judge that defendant's behavior was "matter of fact" in analyzing his options and then giving his consent to search the vehicle. More importantly, in support of the "knowing" element for consent to search the vehicle, the judge heard what the officers said to defendant regarding his right to refuse consent, and confirmed that the entire consent to search form was read aloud before defendant signed the form. See State v. Chapman, 332 N.J. Super. 452, 467 (App. Div. 2000). Absent coercive statements, the reading and signing of a consent form is persuasive evidence of a valid consent to search. See State v. Binns, 222 N.J. Super. 583, 589-90 (App. Div.), certif. denied, 111 N.J. 624 (1988). Based on the totality of the circumstances, Judge Mellaci properly determined that the State met its burden by showing defendant intelligently, voluntarily and knowingly consented to the search of his vehicle. State v. King, 44 N.J. 346, 352-53 (1965).

We acknowledge that Judge Mellaci also denied defendant's suppression motion based upon the inevitable discovery doctrine exception. We affirm Judge Mellaci's denial of the suppression motion on the alternative ground as the judge found the State satisfied the requirements of that doctrine to admit evidence of the drugs found in defendant's vehicle. Under the inevitable discovery doctrine, "the State must show by clear and convincing evidence that had the illegality not occurred, it would have pursued established investigatory procedures that would have inevitably resulted in the discovery of the controverted evidence, wholly apart from its unlawful acquisition." See State v. Dion Robinson, __ N.J. __, __ (2017) (slip op. at 29) (citing State v. Sugar, 100 N.J. 214, 240 (1985)). Judge Mellaci concluded that the drugs found during the search of defendant's vehicle at the scene would have been found during a search of the vehicle occurring elsewhere pursuant to a warrant.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3849-15T2