256 N.J. Super. 430 (1992)
607 A.2d 199
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
IRENE CANCEL, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 8, 1992.
Decided May 21, 1992.
*432 Before Judges GAULKIN, BRODY and MUIR, Jr.
Michael L. Kingman argued the cause for appellant.
Linda K. Danielson, Deputy Attorney General, argued the cause for respondent (Robert J. Del Tufo, Attorney General, attorney; Linda K. Danielson, of counsel and on the letter brief).
The opinion of the court was delivered by BRODY, J.A.D.
Defendant was convicted by her plea of second-degree possession of more than five pounds of marijuana with intent to distribute, a violation of N.J.S.A. 2C:35-5a(1) and -5b(10). The trial judge imposed a five-year prison term pursuant to a plea agreement that she would be sentenced as a third-degree offender.
Defendant challenges the trial judge's order denying her motion to suppress evidence of the marijuana. The police found the marijuana in her suitcase when they opened it at an airport with her consent. She consented after a police officer told her that a dog trained to sniff narcotics had reacted positively to her bag. The ultimate issue is whether defendant's consent was given voluntarily; the key underlying issue is whether routine use of a dog for this purpose violates federal and state constitutional protections against unreasonable searches and seizures.
*433 Two police officers stopped defendant at Newark International Airport just after she picked up a suitcase that she had checked with an airline before boarding its plane on a flight from Arizona to Newark. The bag contained 39 pounds of marijuana that she had been paid $1,000 to bring into this state. Responding to large amounts of marijuana being flown here from Texas and Arizona, the police had a trained dog sniff all luggage aboard the flight as it was being conveyed on a belt into the Newark terminal. The dog's reaction to defendant's bag signalled that it contained narcotics.
When defendant retrieved the suitcase from the luggage carousel, she was stopped by the officers after they had been alerted by radio to the dog's reaction. They requested her name and asked to see her luggage receipt and ticket. The receipt matched the tag on her suitcase. The ticket, however, did not bear her true name. The officers asked defendant if she would allow them to inspect the contents of the bag, advising her that she could refuse but that if she did they would detain her until they obtained a search warrant. She thereupon consented and supplied the officers with the combination to the lock. Upon discovering the marijuana, the officers placed her under arrest.
Defendant's attorney acknowledged at the suppression hearing that the dog's positive reaction to the bag was "reliable." He argued that the search was unlawful because the officers' threat to detain defendant while they obtained a warrant to search the bag rendered her consent involuntary.
The judge denied the motion. He found that though defendant's consent was induced by the officers' threat of continued detention until a warrant issued, "this was not done without probable cause to believe that it would be obtained...."
We agree that the dog's positive reaction to defendant's suitcase and the discrepancy between her name and the name on her ticket gave the police probable cause to arrest her and obtain a warrant to search the suitcase. See Florida v. Royer, *434 460 U.S. 491, 506, 103 S.Ct. 1319, 1329, 75 L.Ed.2d 229, 242 (1983) (had police used dog to sniff defendant's luggage "a positive result would have resulted in his justifiable arrest on probable cause"). See also United States v. Goldstein, 635 F.2d 356, 362 (5th Cir.1981) (positive dog sniff, defendant's furtive behavior and false name on his airline ticket furnished probable cause to obtain search warrant). Thus the officers' comment to defendant that she would be detained while they obtained a search warrant was a fair prediction of events that would follow, not a deceptive threat made to deprive her of the ability to make an informed consent. Compare State v. Dolly, 255 N.J. Super. 278, 284-287, 605 A.2d 238, 241-242 (App.Div. 1991) (consent deemed involuntary when induced by threat to execute defective search warrant).
The trial judge found that defendant voluntarily consented to the search in acceptance of the fact that a lawful search was inevitable. We must sustain the judge's finding because it "could reasonably have been reached on sufficient credible evidence present in the record." State v. Johnson, 42 N.J. 146, 162, 199 A.2d 809 (1964). Defendant's consent was voluntary, i.e., it was the result of a free (albeit discomfiting) choice, even though it was given while she was detained against her will. See United States v. Glover, 957 F.2d 1004, 1013 (2nd Cir.1992) (detained defendant's consent to search luggage found to be voluntary despite police officers' threat that if dog sniffed narcotics in his luggage they would apply for search warrant). Cf. State v. Hladun, 234 N.J. Super. 518, 560 A.2d 1348 (Law Div. 1989) (arrested defendant's consent to search, given after repeated prior refusals, found to be involuntary when induced by police threats to obtain search warrant though there was no probable cause).
Defendant argues for the first time on appeal that even though the dog's reaction to her suitcase may have given the police probable cause, it could not lawfully be used as a basis for detaining or arresting her or as a basis for obtaining a *435 search warrant because employing a dog to sniff luggage for narcotics without prior reasonable suspicion is an unlawful search prohibited by the federal and state constitutions. We disagree.
We initially observe that there was a reasonable basis for suspecting that luggage on a flight from Arizona to Newark would contain marijuana. Without contradiction, the State presented evidence that flights from Texas and Arizona were being used increasingly to transport marijuana into New Jersey. This evidence was sufficient to satisfy the modest level of reasonable suspicion needed to justify the unintrusive use of dogs to sniff all luggage on such flights for narcotics. See State v. Alexander, 191 N.J. Super. 573, 577, 468 A.2d 713 (App.Div. 1983).
Moreover, the police used the dog to sniff for narcotics before defendant was in any way detained. Thus it cannot be said that she was detained without reasonable suspicion. Had she been detained without reasonable suspicion until a narcotics-sniffing dog was brought to the scene an argument could have been made that the detention was unlawful and the evidence later uncovered should be suppressed. See United States v. Place, 462 U.S. 696, 706, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110, 120 (1983). However, a person who is not delayed while a dog sniffs luggage that she had surrendered to a common carrier cannot claim that she has been unlawfully detained without reasonable suspicion because she has not been detained at all. United States v. Lovell, 849 F.2d 910, 915-916 (5th Cir.1988).
A question distinct from whether defendant was unlawfully detained before the dog sniffed the marijuana in her suitcase is whether routine use of a trained dog to sniff luggage in a public passenger terminal is itself an unlawful search. If it is, the dog's reaction could not be considered a basis for probable cause. The United States Supreme Court has held that using a dog to sniff for narcotics in a public place is not a search.

*436 The purpose for which respondent's luggage was seized, of course, was to arrange its exposure to a narcotics detection dog. Obviously, if this investigative procedure is itself a search requiring probable cause, the initial seizure of respondent's luggage for the purpose of subjecting it to the sniff test  no matter how brief  could not be justified on less than probable cause. [Citations omitted.]
The Fourth Amendment "protects people from unreasonable governmental intrusions into their legitimate expectations of privacy." United States v Chadwick, 433 US[1], at 7, 53 LEd2d 538, 97 SCt 2476 [(1977)]. We have affirmed that a person possesses a privacy interest in the contents of personal luggage that is protected by the Fourth Amendment. Id., at 13, 53 LEd2d 538, 97 SCt 2476. A "canine sniff" by a well-trained narcotics detection dog, however, does not require opening the luggage. It does not expose noncontraband items that otherwise would remain hidden from public view, as does, for example, an officer's rummaging through the contents of the luggage. Thus, the manner in which information is obtained through this investigative technique is much less intrusive than a typical search. Moreover, the sniff discloses only the presence or absence of narcotics, a contraband item. Thus, despite the fact that the sniff tells the authorities something about the contents of the luggage, the information obtained is limited. This limited disclosure also ensures that the owner of the property is not subjected to the embarrassment and inconvenience entailed in less discriminate and more intrusive investigative methods.
In these respects, the canine sniff is sui generis. We are aware of no other investigative procedure that is so limited both in the manner in which the information is obtained and in the content of the information revealed by the procedure. Therefore, we conclude that the particular course of investigation that the agents intended to pursue here  exposure of respondent's luggage, which was located in a public place, to a trained canine  did not constitute a "search" within the meaning of the Fourth Amendment.
United States v. Place, 462 U.S. at 706-707, 103 S.Ct. at 2644-2645, 77 L.Ed.2d at 120-121.
Our extensive quotation from Place not only explains why warrantless police use of narcotics-sniffing dogs is permitted under the Fourth Amendment of the United States Constitution, but also suggests why it would be permissible under article I, paragraph 7 of the New Jersey Constitution. Our Supreme Court declined to interpret that paragraph of the New Jersey Constitution as the United States Supreme Court had interpreted the Fourth Amendment in California v. Greenwood, 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988), which sustained a warrantless police examination of a person's garbage. In State v. Hempele, 120 N.J. 182, 576 A.2d 793 (1990), *437 our Court held that such an examination is unlawful because the New Jersey Constitution does not allow police to rummage through people's private, though discarded, material. "Clues to people's most private traits and affairs can be found in their garbage." Id. at 201, 576 A.2d 793. The Place Court made it clear, however, that the limited and discrete intrusion of a narcotics-sniffing dog would satisfy our Supreme Court's concern that police not rummage through private material without a warrant. Police do not violate the New Jersey Constitution by routinely using dogs to detect narcotics in luggage at public airports.
The final issue relates to defendant's sentence. By merely listing the statutory numerical designation of the applicable aggravating and mitigating factors the trial judge did not discharge his obligation to articulate the weight he attributed to each factor when imposing a sentence. See State v. Roth, 95 N.J. 334, 368, 471 A.2d 370 (1984). However, we need not remand for resentencing. A sentence imposed pursuant to a plea agreement is presumed reasonable. State v. Pillot, 115 N.J. 558, 566, 560 A.2d 634 (1989). Also, the plea agreement permitted the judge to impose no more than a five-year prison term, which is two years less than the presumptive sentence for the second-degree crime that defendant committed. Finally, the weight attributable to the deterrence factor, cited by the judge, is obvious. People like defendant who commit serious drug offenses but are not likely to attract police attention because they have no criminal record must be impressed that they will pay a high price for what may seem like easy money.
Affirmed.