JUSTICE TIMPONE delivered the opinion of the Court.
*911 **33 In this case, the Court considers the validity of a driver's consent to search her automobile after she initially denied a police officer's request to search it. Because the trial court's determination that the driver ultimately knowingly and voluntarily gave consent to search is supported by sufficient credible evidence, we find that the trial court properly denied defendant's motion to suppress the evidence seized during the search.
**34 I.
We garner these undisputed facts from the record, including the dash-cam videos taken at the scene by the Mobile Video Recorder (MVR) in the police vehicle. The parties stipulated to the admission of the MVR recording and agreed it contained sufficient facts for a hearing on defendant's motion to suppress. No witnesses testified, and the parties agreed to rely solely on the MVR recording to support their arguments. We have reviewed that video.
In March 2012, New Jersey State Trooper John Faust pulled over a 2002 Mercury Sable with a damaged taillight on Interstate 295 in Burlington County. The driver, Shonsheray Chandler, had changed lanes without signaling. There were passengers in Chandler's car: her six-year-old daughter, who was in the back seat, and defendant Malcolm Hagans, sitting in the front passenger seat. Faust approached the passenger side of the vehicle and asked Chandler for her driving documents.
While waiting, Faust smelled the odor of burnt marijuana in the vehicle. He asked defendant, who was on his cell phone, to hang up. When defendant objected, Faust asked him to step out of the vehicle, arrested him, handcuffed him, called for back-up, and administered Miranda warnings. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
Faust then asked Chandler to step out of the vehicle, administered Miranda warnings, and questioned her about the presence of marijuana in the vehicle. Faust handcuffed Chandler and placed her in the backseat of his police vehicle. Chandler denied knowing defendant had marijuana on him and denied that she had been smoking marijuana in the car. Upon request, Faust brought Chandler's daughter to the police car to be with her mother. Officers at the scene placed defendant in another police vehicle.
Faust requested Chandler consent to a search of her vehicle. Before reading the consent form to her, Faust told Chandler that "it would be a lot easier if you would just make things easy."
**35 Faust read the consent form aloud. He advised Chandler of her right to refuse consent and that if she refused, barring any other reason to detain her, she could leave. He also explained if she consented, she had a right to be present during the search and could withdraw her consent at any time. Faust asked whether she would give consent, and Chandler responded "no."
Faust then discussed his next steps. "I know, but at this time ... we are going to apply for a search warrant, okay, and that is kinda going to prolong the inevitable. I would just like it to be easier." Chandler replied, "Go ahead." Faust then inquired, "What's that ma'am?," to which Chandler repeated "Go ahead." Faust asked, "Are you sure?" Chandler answered, "Yeah." Faust countered, "So you're saying yes?" Chandler responded, "Yes."
To confirm Chandler's decision, Faust re-read her the consent-to-search form in its entirety. Faust then again asked Chandler if she consented to the search of her *912 vehicle; she responded "yes." Faust repeated for the MVR that Chandler had initially denied consent but changed her mind and consented because she "did not want to wait any longer."
The search produced a bag of marijuana and a loaded .22 caliber pistol. Chandler denied knowledge of the pistol, which police found behind the front passenger seat, near Chandler's daughter. Faust explained to Chandler that the Division of Youth and Family Services-now the Division of Child Protection and Permanency-would be notified given the proximity of the pistol to her young daughter.
Defendant ultimately admitted to ownership of the marijuana and the pistol. He was charged with unlawful possession of a weapon, in violation of N.J.S.A. 2C:39-5(b), fourth-degree child abuse, in violation of N.J.S.A. 9:6-1, and a disorderly persons offense for possession of marijuana. Chandler was not charged.
At a suppression hearing, the trial court found that Faust had probable cause to pull the vehicle over for changing lanes without a signal and probable cause for a search upon smelling burnt **36 marijuana. Although the court found that several of the factors set forth in State v. King, 44 N.J. 346, 352-53, 209 A.2d 110 (1965), militated against a finding of Chandler's voluntary consent, it determined the totality of the circumstances indicated that the consent to search was valid and not coerced. The court found no taint in Chandler's consent, determining Faust did not badger her or attempt to further persuade her to consent.
Defendant pleaded guilty to gun possession, preserving his right to appeal the denial of the motion to suppress. The remaining charges against him were dismissed. The trial court sentenced defendant to a five-year term of imprisonment with a one-year period of parole ineligibility.
The Appellate Division affirmed based on the totality of the evidence, finding that the initial stop was justified by Faust's reasonable suspicion of a motor vehicle infraction and found valid the subsequent search because the driver's consent to search was not coerced.
This Court granted certification, limited to the issue of whether Chandler's "consent to search the motor vehicle was freely and voluntarily given." 229 N.J. 161, 160 A.3d 709 (2017).
II.
A.
Defendant urges this Court to reverse the Appellate Division's finding that Chandler voluntarily consented to the search of her vehicle.
Defendant insists the circumstances surrounding Chandler's consent were steeped in coercion leading to her involuntarily consenting to the search. Defendant maintains the Appellate Division misapplied the five factors delineated by the Court in King. Defendant argues the following circumstances establish Chandler's coerced consent: (1) Chandler consented while under arrest; (2) Faust had physically restrained Chandler by handcuffing and **37 placing her in a police vehicle; (3) Chandler denied knowledge of contraband in the car and knew that a search would result in the discovery of marijuana; and (4) Faust attempted to persuade Chandler to consent after she initially refused.
Lastly, defendant contends that Faust's statement concerning the inevitability of a search warrant rendered Chandler's consent involuntary. Defendant asserts that the circumstances facing Chandler were substantially more coercive than those facing the defendant in State v. Cancel, in *913 which an officer made a similar statement but the court nevertheless found the consent voluntary. 256 N.J. Super. 430, 433-34, 607 A.2d 199 (App. Div. 1992).
B.
The State argues that Chandler's consent was knowing and voluntary under the totality of the circumstances and urges this Court to affirm the Appellate Division. The State asserts the MVR conveyed Faust's professionalism in dealing with Chandler throughout their exchanges.
The State also notes that the factors in King merely guide the voluntariness analysis and are not dispositive. Concerning Faust's statement about the inevitability of a search warrant, the State argues the Appellate Division correctly applied Cancel, holding that police may constitutionally provide a fair prediction of events to follow a denial of consent.
III.
A.
In reviewing the grant or denial of a motion to suppress, we uphold the trial court's factual findings underlying that decision "so long as those findings are supported by sufficient credible evidence in the record." State v. Gamble, 218 N.J. 412, 424, 95 A.3d 188 (2014) (citing State v. Elders, 192 N.J. 224, 243, 927 A.2d 1250 (2007) ). We "reverse only when the trial court's determination is 'so clearly mistaken that the interests of justice demand **38 intervention and correction.' " Id. at 425, 95 A.3d 188 (quoting Elders, 192 N.J. at 244, 927 A.2d 1250 ).
Video-recorded evidence is reviewed under the same standard. State v. S.S., 229 N.J. 360, 381, 162 A.3d 1058 (2017) (concluding that a trial court's fact-finding based solely on a video recording is disturbed only "when factual findings are so clearly mistaken-so wide of the mark-that the interests of justice demand intervention").
The panel's decision here predated our opinion in S.S. and included findings based on the panel's own de novo review of the MVR. We adhere to the principles we enunciated in S.S.
We review the legal determinations of the trial court de novo. Gamble, 218 N.J. at 425, 95 A.3d 188 (citing State v. Gandhi, 201 N.J. 161, 176, 989 A.2d 256 (2010) ). Those determinations are not entitled to any special deference. Ibid. (citing Gandhi, 201 N.J. at 176, 989 A.2d 256 ).
Defendant has automatic standing to challenge the automobile search because the marijuana and gun recovered as a result of the search constitute essential elements of the crime with which he was charged. State v. Lamb, 218 N.J. 300, 313, 95 A.3d 123 (2014) (citing Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), overruled by United States v. Salvucci, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980) ).
B.
The Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution prohibit " 'unreasonable searches and seizures' by government officials." State v. Watts, 223 N.J. 503, 513, 126 A.3d 1216 (2015). " 'Warrantless searches are presumptively unreasonable,' " and "the State bears the burden of proving by a preponderance of the evidence not only that the [warrantless] search or seizure was premised on probable cause, but also that it 'f[ell] within one of **39 the few well-delineated exceptions to the warrant requirement.' " State v. Bryant, 227 N.J. 60, 69-70, 148 A.3d 398 (2016) (third alteration in *914 original) (quoting State v. Johnson, 193 N.J. 528, 552, 940 A.2d 1185 (2008) ). Consent to search is a "long-recognized" exception to the warrant requirement. State v. Coles, 218 N.J. 322, 337, 95 A.3d 136 (2014).
Consent searches of motor vehicles that are pulled over by police are valid only if: (1) "there is a reasonable and articulable basis beyond the initial valid motor vehicle stop to continue the detention after completion of the valid traffic stop," State v. Carty, 170 N.J. 632, 647, 790 A.2d 903 (2002) ; and (2) the consent is "given knowingly and voluntarily," id. at 639, 790 A.2d 903. The lynchpin to voluntary consent "is whether a person has knowingly waived [her] right to refuse to consent to the search." State v. Domicz, 188 N.J. 285, 308, 907 A.2d 395 (2006) (citing State v. Johnson, 68 N.J. 349, 353-54, 346 A.2d 66 (1975) ). The burden is on the State to prove "that the individual giving consent knew that he or she 'had a choice in the matter.' " Carty, 170 N.J. at 639, 790 A.2d 903 (quoting Johnson, 68 N.J. at 354, 346 A.2d 66 ). Specifically, the consenting individual must have been aware of her right to refuse, before giving consent. Johnson, 68 N.J. at 354, 346 A.2d 66.
In the 1965 case of State v. King, this Court delineated factors for use by our courts in considering the voluntariness of consent. 44 N.J. at 352-53, 209 A.2d 110. Factors potentially indicating coerced consent include:
(1) that consent was made by an individual already arrested; (2) that consent was obtained despite a denial of guilt; (3) that consent was obtained only after the accused had refused initial requests for consent to search; (4) that consent was given where the subsequent search resulted in a seizure of contraband which the accused must have known would be discovered; [and] (5) that consent was given while the defendant was handcuffed.
[ Ibid. (citations omitted).]
Factors potentially indicating voluntariness of consent include:
(1) that consent was given where the accused had reason to believe that the police would find no contraband; (2) that the defendant admitted his guilt before consent; [and] (3) that the defendant affirmatively assisted the police officers.
**40 [ Id. at 353 (citations omitted).]
The Court emphasized that those factors were not commandments, but "guideposts to aid a trial judge in arriving at his conclusion." Ibid. The Court cautioned that "the existence or absence of one or more of the factors mentioned above may be of great significance in the circumstances of one case, yet be of slight significance in another." Ibid. Indeed, the Court explained, "many decisions have sustained a finding that consent was voluntarily given even though the consent was obtained under the authority of the badge or after the accused had been arrested." Ibid. Voluntariness depends on "the totality of the particular circumstances of the case" with each case "necessarily depend[ing] upon its own facts." Ibid.
C.
Against that backdrop, we now consider driver Chandler's consent to the search of her motor vehicle.
The heart of our voluntariness analysis hinges on whether an individual has knowingly waived his or her right to refuse consent.
After determining the automobile stop was valid, the trial court acknowledged and evaluated the King factors but found that Chandler consented to the search voluntarily even though a majority of those *915 factors cut against a finding of voluntariness. Notably, the court stressed the officer's lack of insistence, the short period between the initial refusal and the consent, the officer's non-aggressive request for clarification, and Chandler's repeated affirmations that she did, in fact, give her consent to search. In the trial court's view, the video evidence was more compelling than the results suggested by a mechanical application of the King factors to the facts of the case.
Over fifty years ago, when King was decided, MVRs did not exist. Because of rapid developments in technology, MVRs are increasingly mounted in police vehicles, having become another important tool with the capacity to aid in the search for the truth.
**41 As we recently noted in North Jersey Media Group, Inc. v. Township of Lyndhurst, "[MVR] recordings, made while an event unfolds, protect the public and police alike in that the videos can expose misconduct and debunk false accusations." 229 N.J. 541, 575-76, 163 A.3d 887 (2017).
The MVR aided the trial court here because it permitted visual and audial evaluation of the police and driver's interaction on the issue of consent. Specifically, the MVR footage helped the trial court determine that Chandler voluntarily consented to the search of her vehicle. We find sufficient credible evidence supports that determination.
After Trooper Faust read driver Chandler the consent form, she initially refused to consent. Trooper Faust told Chandler that his next step would be to obtain a search warrant and that she was simply postponing the "inevitable." Chandler told him to "Go ahead." Faust then asked several different questions to ensure she understood and consented, to which Chandler responded affirmatively. He re-read the entire consent form aloud to her, reminding her of the right to refuse consent, to depart after refusing if there existed no other reason to detain her, to withdraw consent at any time, and to be present during the search. Faust even repeated for the MVR that Chandler initially denied consent but had subsequently changed her mind.
Observing the time frame of the stop, the trial court concluded "[t]his is not a situation where you have an officer badgering ... the driver trying to get consent. The officer made one statement [and had] no further discussions with the driver. The driver voluntarily without any type of coercion or taint did give consent."
Based on its own review, the Appellate Division observed that Chandler appeared at ease throughout the entire interaction and listened to and calmly considered her options. Faust's actions, in the panel's view, were not menacing, harassing, or deceptive. The panel's observations underscored those of the trial court.
**42 Defendant points to the King guideposts as dispositive in finding Chandler to have been coerced. We disagree. The objective of a court undertaking a voluntariness analysis is to scrutinize "the totality of the particular circumstances of the case." King, 44 N.J. at 353, 209 A.2d 110 (emphasis added). And, in S.S. we stressed the capacity of video to bring clarity to a challenged proceeding, stating that "reading a cold transcript is no substitute for viewing the video in evaluating the circumstances of an interrogation." 229 N.J. at 385, 162 A.3d 1058.
Defendant further contends that Faust's statement-"We are going to apply for a search warrant, okay, and that is just kinda going to prolong the inevitable"-coerced Chandler's consent. Although the use of the term "inevitable" was somewhat anticipatory as to what might follow, the *916 manner in which it was used here was not coercive.
An officer's comment regarding the inevitability of a search warrant does not indicate coercion if it is "a fair prediction of events that would follow" rather than "a deceptive threat made to deprive [an individual] of the ability to make an informed consent." Cancel, 256 N.J. Super. at 434, 607 A.2d 199. As a best practice, police officers should tell a suspect only the measures they intend to take-apply for a search warrant-and should not offer a prediction about whether a warrant will issue. Here, Faust had probable cause to support the issuance of a search warrant given the odor of burnt marijuana. State v. Walker, 213 N.J. 281, 290, 62 A.3d 897 (2013) ("New Jersey courts have recognized that the smell of marijuana itself constitutes probable cause that a criminal offense ha[s] been committed and that additional contraband might be present." (alteration in original) (quoting State v. Nishina, 175 N.J. 502, 516-17, 816 A.2d 153 (2003) ) ). Faust's statement was nothing more than a candid assessment of the likelihood that a judge would grant his application for a search warrant.
In sum, we find sufficient credible evidence supports the trial court's determination that Chandler's consent was voluntary under **43 the totality of the circumstances, despite the presence of several of the potentially coercive King factors. Here, technological advancements permitted the trial court to better evaluate the manner in which Faust obtained consent. Such possibilities-which are increasingly common today-are precisely why the King Court factors are guideposts rather than rigid absolute authority.
We find sufficient evidentiary support for the trial court's conclusion that Chandler knowingly and voluntarily consented to Faust's search of her vehicle. We hold that the trial court properly denied defendant's motion to suppress.
IV.
We affirm the judgment of the Appellate Division upholding the trial court's denial of defendant's motion to suppress.
CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON join in JUSTICE TIMPONE's opinion.