**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4075-16T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

MICHAEL M. MACKASON,
a/k/a MIKEY, CLAP, and
MIKEMACK,

     Defendant-Appellant.

_____

Submitted October 2, 2018 – Decided November 8, 2018

Before Judges Rothstadt and Gilson.

On appeal from Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 15-07-1255.

Joseph E. Krakora, Public Defender, attorney for appellant (Jay L. Wilensky, Assistant Deputy Public Defender, of counsel and on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Lila B. Leonard, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Following the denial of his motion to suppress a gun seized from a car, defendant Michael Mackason pled guilty to second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b). He was sentenced to five years in prison with forty-two months of parole ineligibility. He appeals contending that it was an error to deny his motion to suppress. We affirm because the gun was seized after the driver of the car gave knowing, intelligent, and voluntary consent to search the vehicle.

I

The facts were developed at an evidentiary hearing on the motion to suppress. Three witnesses testified: (1) police officer Fil James Lao; (2) Mark Clements, a private investigator retained by defendant; and (3) A.J., the driver of the car.[1] The State and defendant also submitted several documents into evidence, including a consent to search form signed by A.J.

Officer Lao testified that on April 17, 2015, he and another Asbury Park police officer met with a known confidential source. The source told them about

---

[1] A.J. was indicted as a co-defendant. When defendant pled guilty, he took responsibility for the gun and exonerated A.J. Following defendant's sentence, the State dismissed the charges against A.J. Accordingly, we use initials to protect her privacy.

A-4075-16T3

an individual known as "Clap" and reported that Clap had been involved in a home invasion and that Clap possessed a firearm. The source also informed the police that Clap frequently visited Asbury Park in the vicinity around the 800 block of Central Avenue, and that Clap was often accompanied by a light-skinned female who drove a red sports utility vehicle (SUV). Further, the source told the police that Clap was believed to be an active member of a street gang.

Using the information provided by the source, Officer Lao ran a search through a computer database and it identified defendant and provided a photograph. Officer Lao showed that photograph to the source, who confirmed that the photograph depicted the individual he knew as Clap. Officer Lao conducted further investigation and learned that there were several active warrants for defendant.

That same evening, five police officers set up surveillance in the area around the 800 block of Central Avenue. At approximately 6:28 p.m., Officer Lao observed a red SUV and he saw a person in the passenger seat who matched the description of Clap given by the confidential source.

The red SUV was parked and the police approached the vehicle. As Officer Lao came up on the driver's side, he saw defendant lean back and reach behind the driver's seat. Defendant and the driver were directed to exit the SUV.

3

Officer Lao testified that he spoke to the driver, A.J., and informed her that he had information that there was a gun in the vehicle. According to the officer, the driver "was shocked" and stated that she had seen no gun. Officer Lao then read A.J. her Miranda[2] rights, she acknowledged that she understood those rights and signed a Miranda card waiving those rights.

Officer Lao also asked A.J. for consent to search the car for the weapon. He testified that he went through a consent form line-by-line and that A.J. acknowledged that she understood her rights and that she gave permission for the officers to conduct the search. The vehicle was then searched and a handgun was found in a purse located behind the driver's seat.

The State also introduced mobile video recordings taken from the patrol cars. Those recordings did not capture A.J. providing the consent, but they did show her walking to the sidewalk after she had exited the vehicle.

A.J. also testified at the hearing. On certain facts, A.J.'s testimony conflicted with the testimony provided by Officer Lao. A.J. testified that when the officers arrived, she "just saw a whole bunch of guns." She went on to testify that she was afraid of the officers and that they were screaming as they approached the vehicle. Although she acknowledged that the officers read her

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

the consent form, she testified that she signed the form because she was doing what she was told.

Based on the evidence presented at the evidentiary hearing, the trial court found that A.J., the driver, had given knowing and voluntary consent to search the car. The trial court did not find all of the testimony by Officer Lao to be completely credible. Specifically, the trial court did not accept Lao's testimony concerning how the police approached the vehicle. Nevertheless, the trial court also found that A.J. was intelligent, understood what she was being asked regarding the consent, and gave knowing and intelligent consent. The trial court also noted that A.J. had not initialed all the lines on the consent form. The court went on to find, however, that A.J. had been read each of the lines, understood them, and she signed the consent form.

The trial court also analyzed the seizure of the weapon. First, the court found that the police had made a lawful stop of the vehicle based on the information provided by the confidential source and the police's follow-up investigation, including that defendant had several outstanding warrants. Second, the court found that the weapon had been lawfully seized in accordance with valid consent to search the car.

A-4075-16T3

II

Defendant appeals the denial of his motion to suppress and argues that he should be allowed to withdraw his guilty plea because without the handgun the State will lack the evidence necessary to convict him.[3]  Specifically, defendant articulates his argument as follows:

> THE DRIVER'S CONSENT WAS INVOLUNTARY AND THUS INVALID, NECESSITATING SUPPRESSION. U.S. CONST. AMENDS. IV, XIV; N.J. CONST. ART. 1, [¶] 7.

Our review of a denial of a motion to suppress physical evidence following an evidentiary hearing is limited.  We only disturb factual findings made by the trial court when they are not supported by sufficient credible evidence in the record.  State v. Hagans, 233 N.J. 30, 37 (2018) (quoting State v. Gamble, 218 N.J. 412, 424 (2014)).  This deference is required "because those findings 'are substantially influenced by [an] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'"  Gamble, 218 N.J. at 424-25 (alteration in original) (quoting State v.

---

[3]  Defendant gave a statement following his arrest.  He moved to suppress that statement, arguing that it was fruit of the poisonous tree from the illegal seizure of the handgun.  On this appeal, defendant has not presented any independent arguments for the suppression of his statement.  Thus, his argument before us focuses on the contention that the gun was illegally seized without valid consent to search and that everything thereafter was fruit of the poisonous tree.

6

Johnson, 42 N.J. 146, 161 (1964)).  Accordingly, we "reverse only when the trial court's determination is 'so clearly mistaken that the interests of justice demand intervention and correction.'"  Hagans, 233 N.J. at 37-38 (quoting Gamble, 218 N.J. at 425).  We review the trial court's legal determinations de novo.  Id. at 38 (citing Gamble, 218 N.J. at 425).

The United States Constitution and the New Jersey Constitution protect individuals from "'unreasonable searches and seizures' by government officials."  Ibid. (quoting State v. Watts, 223 N.J. 503, 513 (2015)).  A warrantless search is presumptively unreasonable.  Ibid.  To overcome this presumption, the State must prove by a preponderance of the evidence that the search was based on probable cause and "f[ell] within one of the few well-delineated exceptions to the warrant requirement."  Id. at 38-39 (alteration in original) (quoting State v. Bryant, 227 N.J. 60, 69-70 (2016)).  One such exception is consent to search.  Id. at 39 (quoting State v. Coles, 218 N.J. 322, 337 (2014)).

Our Supreme Court has explained that consent to search a motor vehicle stopped by police is only valid if two conditions are met:  "(1) 'there is a reasonable and articulable basis beyond the initial valid motor vehicle stop to continue the detention after completion of the valid traffic stop,' and (2) the consent is 'given knowingly and voluntarily[.]'"  Ibid. (quoting State v. Carty,

170 N.J. 632, 639, 647 (2002)).  As to the first requirement, an officer may request consent to search a vehicle when the officer has a reasonable and articulable suspicion that the persons in the vehicle are engaging in criminal activity.  See Carty, 170 N.J. at 647.  As to the second requirement, a knowing waiver includes knowledge by the party giving consent that he or she has the right to refuse to allow the search.  State v. Domicz, 188 N.J. 285, 308 (2006).  It is the state's burden to show "that the individual giving consent knew that he or she 'had a choice in the matter.'"  Hagans, 233 N.J. at 39 (quoting Carty, 170 N.J. at 639).  To determine whether consent was given voluntarily, courts examine "the totality of the particular circumstances of the case."  Id. at 40 (quoting State v. King, 44 N.J. 346, 353 (1965)).

Here, the initial issue is whether the police had the right to stop the SUV and make a field investigation.  In that regard, we note that Officer Lao testified that the vehicle was stopped.  Moreover, the police officer had a reasonable, articulable suspicion to question defendant based on the information provided by the confidential source and the police's follow-up investigation.  Importantly, the police knew that defendant had open warrants.  Accordingly, they had the right to approach the SUV and question both the driver and defendant.  See State v. Stovall, 170 N.J. 346, 356 (2002) (noting that the reasonable suspicion

standard only requires that a police officer "be able to articulate something more than an 'inchoate and unparticularized suspicion or hunch.'" (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989))).

The second question is whether the police obtained valid consent to search the vehicle. Defendant contends that the driver, A.J., did not provide knowing and voluntary consent to search. In that regard, defendant relies on the testimony of A.J. The trial court, however, found that A.J. provided valid consent. As noted earlier, the trial court questioned some of the testimony of Officer Lao regarding how the police approached the vehicle. On the critical issue of consent, however, the trial court found that Officer Lao had read A.J. each of the lines of the written consent form, that A.J. had understood her rights, and that she had voluntarily and knowingly consented to the search.

We discern no reversible error in the trial court's finding. The trial court was able to evaluate the credibility of the witnesses. Accordingly, the trial court could reasonably find the officer credible as to certain testimony and less credible as to other testimony.

Our Supreme Court has identified certain factors that tend to show whether consent was coerced. King, 44 N.J. at 352. Those factors include:

> (1) that consent was made by an individual already arrested; (2) that consent was obtained despite a denial

of guilt; (3) that consent was obtained only after the accused had refused initial requests for consent to search; (4) that consent was given where the subsequent search resulted in a seizure of contraband which the accused must have known would be discovered; [and] (5) that consent was given while the defendant was handcuffed[.]

[Ibid. (citations omitted).]

The Court has also identified certain factors that tend to show whether consent was voluntary. Id. at 353. Those factors include: "(1) that consent was given where the accused had reason to believe that the police would find no contraband; (2) that the defendant admitted his [or her] guilt before consent; [and] (3) that the defendant affirmatively assisted the police officers[.]" Ibid. (citations omitted).

Applying those factors here, there is no showing that the trial court erred in determining that A.J. gave knowing and voluntary consent. A.J. had not been arrested when she was asked for consent. She also denied any knowledge of a gun and, hence, any indication that she was guilty. There was no testimony that she initially denied the request to search, and she testified consistently that she did not know that the gun was in the car. Finally, there was no testimony that A.J. was handcuffed when she gave consent. Instead, she was arrested after the handgun was found. In short, we discern no reversible error in the trial court's

decision to deny the motion to suppress the seizure of the handgun and, therefore, defendant's conviction is affirmed.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-4075-16T3