**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3346-17T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ANTOINE D. MCCOY,

     Defendant-Appellant.

_____

Submitted February 6, 2019 – Decided May 24, 2019

Before Judges Fuentes and Moynihan.

On appeal from Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 17-01-0063.

Joseph E. Krakora, Public Defender, attorney for appellant (Lauren Stephanie Michaels, Assistant Deputy Public Defender, of counsel and on the briefs).

Damon G. Tyner, Atlantic County Prosecutor, attorney for respondent (John Joseph Santoliquido, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Antoine McCoy pleaded guilty to unlawful possession of a handgun, N.J.S.A. 2C: 39-5(b)(1), which was seized pursuant to what the State contended was a consent search of a backpack in a vehicle in which defendant was a passenger.[1] Defendant unsuccessfully challenged that search and appeals from an order denying his motion to suppress.[2] His sole argument on appeal is:

> THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE BECAUSE THE STATE FAILED TO PROVE BY CLEAR AND CONVINCING

[1] The State, in its merits brief, argues the search was justified pursuant to the automobile exception to the warrant requirement. See State v. Witt, 223 N.J. 409 (2015). The State did not raise that exception to the trial court. We, therefore, will not consider that argument on appeal. State v. Robinson, 200 N.J. 1, 19-20 (2009). Inexplicably, the State did not address the consent search issue in its brief.

[2] Defendant, in his merits brief, contends "[a]ll of the evidence found in the car, as well as all evidence later seized from [defendant's] person, as the fruits of this unlawful search, should have been suppressed." But he also stated, "Although there was no evidence offered at the suppression hearing, the trial judge noted in his opinion that drugs were also found in the car, and on [defendant] when he was searched after arrest." The record on appeal does not contain defendant's motion to suppress; we do not know if he challenged the seizure of any evidence other than the handgun. The motion judge's opinion did not address the seizure of any evidence except the handgun; the order denying the suppression motion does not specify the evidence to which the order pertained. Our review is limited to the matters addressed by the motion judge. See Witt, 223 N.J. at 419 (noting parties must raise an issue before the trial court to allow an appellate court to review it); Toll Bros., Inc. v. Twp. of W. Windsor, 173 N.J. 502, 539 (2002) (noting courts should be "reluctant to review matters . . . in any case where a record had not been fully developed by the parties in the trial courts").

EVIDENCE THAT MCCOY KNOWINGLY AND
VOLUNTARILY CONSENTED TO THE SEARCH.

When reviewing a motion to suppress, we "must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Rockford, 213 N.J. 424, 440 (2013) (quoting State v. Robinson, 200 N.J. 1, 15 (2009)). Appellate intervention is necessary only when the trial court's findings are "'clearly mistaken' or 'so wide of the mark' that the interests of justice require[] appellate intervention." State v. Elders, 192 N.J. 224, 245 (2007) (quoting N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007)). We exercise plenary review of a trial court's application of the law to the facts. State v. Cryan, 320 N.J. Super. 325, 328 (App. Div. 1999). Applying those standards, we determine the motion judge's finding that defendant knowingly and voluntarily consented to the search of the backpack in the vehicle was supported by sufficient credible evidence in the record and affirm.

Our Supreme Court, in State v. Hagans, recognized that consent searches have long been accepted as delineated exceptions to the warrant requirement and recently synopsized the legal tenets that ground our analysis of this search:

> Consent searches of motor vehicles that are pulled over by police are valid only if: (1) "there is a reasonable and articulable basis beyond the initial valid motor

vehicle stop to continue the detention after completion of the valid traffic stop," and (2) the consent is "given knowingly and voluntarily[.]" The lynchpin to voluntary consent "is whether a person has knowingly waived [her] right to refuse to consent to the search." The burden is on the State to prove "that the individual giving consent knew that he or she 'had a choice in the matter.'" Specifically, the consenting individual must have been aware of her right to refuse, before giving consent.

[233 N.J. 30, 39 (2018) (citations omitted) (first quoting State v. Carty, 170 N.J. 632, 647 (2002); then quoting Carty, 170 N.J. at 639; then quoting State v. Domicz, 188 N.J. 285, 308 (2006); and then quoting Carty, 170 N.J. at 639).]

The Court reiterated the factors, announced in State v. King, 44 N.J. 346, 352-53 (1965), that may show that consent was coerced:

(1) that consent was made by an individual already arrested; (2) that consent was obtained despite a denial of guilt; (3) that consent was obtained only after the accused had refused initial requests for consent to search; (4) that consent was given where the subsequent search resulted in a seizure of contraband which the accused must have known would be discovered; [and] (5) that consent was given while the defendant was handcuffed.

[Hagans, 233 N.J. at 39 (alteration in original) (quoting King, 44 N.J. at 352-53).]

The Court also identified certain factors that may show that consent was

voluntary: "(1) that consent was given where the accused had reason to believe

A-3346-17T4

that the police would find no contraband; (2) that the defendant admitted his [or her] guilt before consent; [and] (3) that the defendant affirmatively assisted the police officers."  Id. at 39-40 (second alteration in original) (quoting King, 44 N.J. at 353).

Defendant, pointing to the King factors, argues that his "so-called consent was an involuntary product of coercion" due to police conduct during a motor vehicle stop precipitated by a 9-1-1 caller's report that the rear-seat passenger in a black Hyundai containing four males brandished a gun.  According to defendant, police spotted a black Hyundai containing defendant and two other males one and one-half to two miles from the 9-1-1 caller's location.  The police chief and a sergeant in one car and an officer in another car stopped the vehicle. In what the police chief described as a "high-risk car stop," three or four[3] officers approached the vehicle with guns drawn, ordered the driver to shut off the car and ordered all occupants to put their hands outside of the vehicle.  Each occupant was removed from the vehicle.  When defendant was removed, police had him walk backwards toward the rear of the vehicle and handcuffed him

---

[3]  The police chief initially said only she and the other two officers approached the vehicle.  On cross-examination she said, "I know there was definitely three, there may have been four of us."  Other officers – all totaled, approximately ten in eight police cars – eventually arrived at the scene.

behind his back. The police then ordered defendant to sit on the side of the road. While still handcuffed, defendant was presented with the consent-to-search form. Defendant contends these circumstances rendered defendant's consent involuntary.

Defendant's argument fails to take into account "the totality of the particular circumstances of the case." See King, 44 N.J. at 353. Those circumstances, as found by the motion judge, included defendant's cooperation with the police. The police chief testified she approached the passenger side of the vehicle during the high-risk car stop and "kept constant communication" with defendant, the front-seat passenger, "because he was making sure he was doing the right thing." After defendant was handcuffed and seated on the side of the road, he asked the chief who was walking in the area, "Ma'am, can you come over here? I want to let you know that there's a, there's a weapon in the vehicle." After defendant clarified that the weapon was a handgun, the chief asked if it was loaded. Defendant replied that it was. He identified the handgun as a Ruger and said it was in his bookbag. The chief told defendant to remain seated, adding that other officers "were going to be asking him to sign a consent form."

A-3346-17T4

Contrary to defendant's contention in his merits brief that the chief and another officer each asked defendant to sign a consent-to-search form, the record reveals only one officer did so. That officer testified that he completed the form in front of defendant, read "every word" of it to him and explained it. Although the form was not submitted into evidence at the suppression hearing, the officer read its contents into the record:

> I have knowingly and voluntarily given my written consent to the search described above. I have been advised by Officer Stewart, badge number 107, and fully understand that I have the right to refuse to give my consent . . . to search and may depart if no other reason exists for detaining me. I have been further advised that I may withdraw my consent at any time for any reason and that I have the right to be present during the search at a location consistent with the safety of the police officer, myself, and other motor vehicle occupants.

The officer also explained to defendant that he had the right to be present during the search. The officer acknowledged defendant was handcuffed and in custody but stated no officer had a gun pointed at defendant while he obtained his consent. Although the witness space on the form was left blank, the officer testified defendant signed the form "in front of" him.

The motion judge acknowledged "that the nature of the high-risk stop provided conditions that create a higher burden for the State to show

7

[defendant's] consent was voluntary." But the judge recognized that defendant was cooperative throughout the encounter. Having found the police witnesses credible, the judge concluded:

> This was not a situation where the officers used harassment and intimidation to obtain consent. Rather, it was a situation where even after being informed that there was a gun in the car, the officers operated in an abundance of caution and still requested that each individual in the vehicle sign a consent to search form. Further, the Court finds that the State's witnesses provided clear and positive testimony that the officers explained to [defendant], the driver of the vehicle and the other passenger that they had a right to refuse consent and to stop the search at any point.

The motion judge heeded the King Court's instruction that the factors were "guideposts" but "the existence or absence of one or more of the factors mentioned above may be of great significance in the circumstances of one case, yet be of slight significance in another." 44 N.J. at 353. The motion judge considered the totality of the circumstances, including defendant's cooperative nature, and found defendant's consent was voluntary. That finding, buttressed by the record, followed "many decisions [that] have sustained a finding that consent was voluntarily given even though the consent was obtained under the authority of the badge or after the accused had been arrested." Ibid.

We determine that any other argument defendant advanced, not here addressed, to be without sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(2). We add only that defendant did not present any evidence that his thought process in granting consent was influenced by the factors advanced by his counsel in the merits brief relating to police encounters with African-Americans and other minorities.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

9
A-3346-17T4