**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0959-22

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

DAVID J. MILLS, III,
a/k/a DAVID J. MILLS,

     Defendant-Appellant.

_____

Argued November 13, 2024 – Decided December 3, 2024

Before Judges Gilson and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Salem County, Indictment No. 20-12-0194.

Colin Sheehan, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Colin Sheehan, of counsel and on the brief).

Matthew M. Bingham, Assistant Prosecutor, argued the cause for respondent (Kristin Telsey, Salem County Prosecutor, attorney; Matthew M. Bingham, of counsel and on the brief).

PER CURIAM

Defendant David J. Mills, III appeals from his jury trial conviction for second-degree certain persons not to possess a weapon because of prior convictions, N.J.S.A. 2C:39-7(b)(1). Police seized surveillance footage from the landlord Vaughn Groce's (landlord) DV-R system in the basement where defendant, his mother, and brother Davon Mills, resided as tenants, which showed defendant behind the house, allegedly throwing a gun. The DV-R system was connected to outdoor surveillance cameras.

After carefully reviewing the record in light of the parties' arguments and governing legal principles, we reverse and vacate defendant's conviction because the State at the suppression hearing failed to meet its burden that the landlord knowingly, voluntarily, and intelligently consented to a warrantless search of the home and to retrieve surveillance footage from the DV-R.

I.

Factual Background

We discern the facts pertinent to this appeal from the evidence presented by the State at the suppression hearing. See State v. Gibson, 318 N.J. Super. 1, 9 (App. Div. 1999) ("We take this opportunity to remind the parties that on appeal 'we may only consider whether the motion to suppress was properly

decided based on the evidence presented at that time.'" (quoting State v. Jordan, 115 N.J. Super. 73, 76 (App. Div. 1971))).

On June 20, 2022, at approximately 2:00 p.m., the Salem City Police Department responded to reports of shots being fired near a house. Patrolman Robert Klein arrived at the scene and activated his body camera. Klein was accompanied by Chief John Pelura and Investigator Jonathan Seidel. There were several people outside when numerous police officers arrived at the scene. One officer observed co-defendant Kaign Groce with a gun who then ran away. Kaign was pursued, captured, and arrested, but he was not found to be in possession of a gun. Police observed defendant walk into and later out of the house. Klein's body camera did not capture defendant with a gun.

Soon after, defendant's father (David)[1] arrived at the house after hearing about shots being fired in the area and observed six to seven officers "all around the house on that street and the street over." David engaged in conversation with the officers who wanted to secure the house for a search warrant as recorded by the bodycam:

Klein: All right. Hey, David.

---

[1] Parties and individuals who share a last name with the individuals are referred to by their first name for the ease of reference. By doing so, we intend no disrespect.

A-0959-22

Klein: We got to hold the house for a little bit, dude.

David: What you mean?

Klein: Just for a possible search warrant.

David: Oh, hell no. Oh, no, no, no, no, no, no, no, no, no, no. No one's searching my house. Did you see anybody running in there?

Klein: Yes, sir.

David: Who ran in there:

Klein: Like six people.

David: What you mean, six people?

Klein: Yeah. You know I'm not going to lie to you. The only way . . .

David: The only way that –

Klein:  Chill for a little bit.

David: No.

Klein: You'll be there for it.

David: No. What six people run in my house for? I'm just coming in town.

Pelura: Okay. So[,] there was a shooting down here. There are seven casings along your front step, along over here and over here.

4

Klein stopped David from entering the house. The landlord was nearby and spoke with David about the police wanting to search the house. However, David was adamant that no one was going to be searching "his" house.[2] Seidel learned that there were trail cameras in the backyard, which are used for hunting, property security, and wildlife surveillance, and asked David to retrieve the SIM[3] cards, which store memory. Seidel believed the trail cameras may have captured evidence of the shots fired. Seidel requested that David retrieve the SIM cards from the trail cameras because the officers could not do so without a warrant. David complied with Seidel's request to retrieve the SIM cards and gave them to him without executing a consent form. Seidel also did inform David about his right to refuse.

At around 3:00 p.m., Detective Sean Simpkins arrived at the scene. Simpkins asked David for permission to search the surveillance footage from the surveillance cameras located on the outside of the house. David and Simpkins then engaged in the following:

---

[2] It should be noted that David admitted that he does not live at the Salem address, but lives in Delaware. David stated that his wife, Lisa Bagby Mills, and his sons, defendant and Davon, live in the Salem house.

[3] SIM stands for Subscriber Identity/Identification Module.

A-0959-22

Simpkins:   We appreciate your cooperation. It's just that without the trail cam, we don't—do you know who owns these cameras or is that—

David: That's my landlord.

Simpkins: Okay. Do you think he'll (the landlord) give us access to that or no?

David: Probably if I ask him. You know, I'll ask. He put them up there.

Simpkins: Are you and he cool or—

David: Yeah.

Simpkins: Okay.

David: I don't like fooling with that. I just let them keep going and doing what it's doing.

Simpkins: Okay. So he put it up to take—not you?

David: Yeah.

Simpkins: Okay. All right, sir.

David: The landlord put them up there.

Simpkins testified that he knew that the surveillance cameras and the footage were the landlord's property and that he needed the landlord's consent to search them.

At around 5:00 p.m., Simpkins claimed that the landlord consented to a search of the surveillance cameras over the phone. However, Simpkins did not

6

record his telephone conversation with the landlord or mention the call in his police report.

In addition, David did not speak with the landlord and took Simpkins at his word about the landlord ostensibly consenting to the search. Detective Walt Christie then proceeded to read a consent to search form aloud to David to obtain surveillance video from the surveillance cameras connected to the DV-R system, which included David's right to refuse the search. David signed the consent form limited to a search of the surveillance cameras connected to the DV-R system.

Simpkins, Seidel, and Christie then entered the house and seized surveillance footage from the landlord's DV-R system in the basement, which was connected to the surveillance cameras. David accompanied the officers.[4] Footage obtained showed defendant behind the house throwing an object, that looked like a gun.

In December 2020, defendant was charged in three counts of a six-count indictment: second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1) (count three); third-degree hindering, N.J.S.A. 2C:29-3(b)(1) (count

---

[4] The record does not indicate whether defendant was present at time of the searches or if he raised any objection to the searches.

four); and a second-degree certain persons offense, N.J.S.A. 2C:39-7(b)(1) (count six).

## Motion to Suppress

Defendant filed a motion to suppress the trail camera footage and surveillance camera footage seized from the landlord's DV-R system, arguing that the warrantless search of the cameras was unlawful because the State failed to obtain valid consent from the landlord to (1) enter the house, and (2) access and retrieve the surveillance footage from the landlord's DV-R system. On December 10, 2021, January 27, and March 18, 2022, the trial court convened evidentiary hearings at which Seidel, Klein, Simpkins, and David testified. According to David's testimony, the landlord was at the house when he arrived and Simpkins spoke to the landlord about doing a search. Simpkins testified that he knew the landlord and had his phone number. The landlord left the scene prior to David's execution of the consent form to search.

On March 28, 2022, at the close of the evidence and after hearing oral argument, the trial court rendered an oral decision. The trial court granted defendant's motion to suppress the trail camera footage because David was never informed of his right to refuse consent to the search. However, the trial court denied defendant's motion to suppress the surveillance footage concluding that

David gave valid consent to obtain the surveillance footage from the landlord's DV-R system inside the house in the basement.

The trial court noted it was "very troubling" that Simpkins testified "he knew the cameras did not belong" to David and it "did not have any record of the conversation with the landlord," but the trial court's concerns were "somehow ameliorated" by David's testimony that the landlord was "on the scene" and "actually told [David] . . . the officers wanted to get into the house." A memorializing order was entered.

## The Trial

Defendant was tried before a jury from July 20 to July 22, 2022. During deliberations, defendant moved for a mistrial and a new trial on the basis that one of the jurors told the other jurors that an individual close to defendant contacted the juror resulting in the jury being tainted. The trial court conducted a voir dire of all of the jurors, replaced the subject juror with an alternate juror, and restarted deliberations. The jury convicted defendant on count six—second-degree certain persons not to possess a weapon because of prior convictions. The trial court sentenced defendant to five years in State prison without eligibility for parole. This appeal followed.

A-0959-22

Defendant raises the following contentions for our consideration in his merits brief:

POINT I

THE SURVEILLANCE FOOTAGE MUST BE SUPPRESSED BECAUSE THE TRIAL COURT ERRONEOUSLY FOUND THAT DAVID . . . GAVE VALID CONSENT FOR THE WARRANTLESS SEARCH.

A. The Warrantless Search Of The Surveillance Footage Was Unconstitutional Because The Landlord Did Not Consent To Search Of The Surveillance Cameras.

B. David . . . Could Not Consent To The Search Because He Lacked Common Or Apparent Authority Over The Landlord's Surveillance Cameras.

C. David . . . Involuntarily Signed The Consent Form Because He Had Adamantly Refused To Consent To Any Search Of The Home Until The Officers Undercut His Right To Refuse.

POINT II

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR A NEW TRIAL AFTER ONE JUROR DISCLOSED TO OTHER JURORS THAT HE WAS CONTACTED BY A FAMILY MEMBER OR FRIEND OF DEFENDANT AND NEEDED TO BE DISMISSED.

We agree with defendant's argument in Point IA. The police officers' warrantless entry into the basement was invalid because the State did not establish that the landlord had given valid consent to enter the house or retrieve footage from the DV-R owned by him. We therefore reverse the denial of defendant's motion to suppress the surveillance footage and vacate the conviction and sentence.

II.

We began our analysis by acknowledging the legal principles governing the appeal. Our standard of review on a motion to suppress is deferential and must "uphold the factual findings underlying the trial court's decision so long as those findings are 'supported by sufficient credible evidence in the record.'" State v. Nyema, 249 N.J. 509, 526 (2022) (quoting State v. Elders, 192 N.J. 224, 243 (2007)). We defer to the trial court's findings in recognition of its "opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." Ibid.

Under this standard of review, it is "improper for the Appellate Division to engage in an independent assessment of the evidence as if it were the court of first instance." State v. Elkwisni, 384 N.J. Super. 351, 366 (App. Div. 2006). We are "not permitted to 'weigh the evidence, assess the credibility of witnesses,

11

or make conclusions about the evidence.'" Ibid. Our review is restricted to assessing "'whether the findings made [by the trial court] could reasonably have been reached on sufficient credible evidence present in the record.'" Ibid. A trial court's legal conclusions, however, and its view of "the consequences that flow from established facts," are reviewed de novo. Nyema, 249 N.J. at 526-27 (quoting State v. Hubbard, 222 N.J. 249, 263 (2015)).

## III.

Defendant contends that the trial court erred in denying the suppression motion as to the surveillance footage because the State failed to prove the "absent landlord" gave informed, knowing, and voluntary consent to conduct a warrantless search of the surveillance cameras connected to the DV-R system. Defendant asserts David's signing of the consent form did "not save" the warrantless search because David's "so-called consent" was involuntarily obtained based on the police officers' "misrepresentation" that David's signature was a "just a formality". Further, David asserts Simpkins admitted there is no record of the phone call made to the landlord.

The State counters that the landlord gave valid consent to search the surveillance cameras because: (1) Simpkins spoke to the landlord over the phone who authorized David to permit a search of the surveillance video; and (2)

12

David's consent was voluntary because he was aware of his right to refuse consent and his initial refusal was related to a search of the house, not the surveillance cameras connected to the DV-R system in the basement.

"The Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution, in almost identical language, protect against unreasonable searches and seizures." Id. at 527. "The New Jersey Constitution provides greater protections from warrantless searches and seizures than the Fourth Amendment of the Constitution of the United States." State v. Shaw, 237 N.J. 588, 616 (2019). "[U]nder Article I, Paragraph 7 of the New Jersey Constitution, 'a criminal defendant is entitled to bring a motion to suppress evidence obtained in an unlawful search and seizure if he has a proprietary, possessory or participatory interest in either the place searched or the property seized.'" State v. Randolph, 228 N.J. 566, 581 (2017).

This standard's broader protections advance three important State interests, State v. Johnson, 193 N.J. 528, 543 (2008), which our Supreme Court has summarized as follows:

> The first is the State's interest in protecting defendants from having to admit possession to vindicate their constitutional right against unreasonable searches and seizures. The second is to prevent the State from arguing a defendant should be subject to criminal liability for possessing contraband, while asserting the

same defendant had no privacy interest in the area from which police obtained the contraband without a warrant. Our third aim is to increase privacy protections for our citizens and to promote respect for our Constitution by discouraging law enforcement from carrying out warrantless searches and seizures where unnecessary.

[Shaw, 237 N.J. at 616.]

Warrantless searches are presumptively invalid because they are contrary to the United States and the New Jersey Constitutions, State v. Pineiro, 181 N.J. 13, 19 (2009), and "[t]he warrant requirement ... may be dispensed with in only a few narrowly circumscribed exceptions," State v. Patino, 83 N.J. 1, 7 (1980). "To justify a warrantless search or seizure, 'the State bears the burden of proving by a preponderance of the evidence that [the] warrantless search or seizure falls within one of the few well-delineated exceptions to the warrant requirement.' " State v. Vanderee, 476 N.J. Super. 214, 230 (App. Div. 2023). Each exception to the warrant requirement has its own elements that must be satisfied to justify a warrantless search. State v. Johnson, 476 N.J. Super. 1, 20 (App. Div. 2023).

Consent is a well-recognized exception to the warrant requirement. See State v. Domicz, 188 N.J. 285, 305 (2006) ("A search conducted pursuant to consent is a well-established exception to the constitutional requirement that police first secure a warrant based on probable cause before executing a search

14

of a home.") "[A]ny consent given by an individual to a police officer to conduct a warrantless search must be given knowingly and voluntarily." Elders, 192 N.J. at 236. To justify a warrantless search under the consent to search exception, the State bears the burden of proving consent was given voluntarily and the person knew of the right to refuse consent. State v. Hagans, 233 N.J. 30, 39 (2018). "The scope of a consent to search includes what a reasonable person would have understood." Pressler & Verniero, cmt. 2.2 on Rule 3:5-8 (2025).

We next apply the governing principles to the facts presented in this case. The trial court properly granted defendant's motion to suppress the trail camera footage because David was never informed of his right to refuse that search. The trial court's ruling on the trail camera footage is not challenged on appeal. Although we defer to the trial court's credibility assessments, on this evidence, the actual inquiry is not whether David gave valid consent for the search of the landlord's surveillance cameras. Rather, the key issue before us is whether the testimony elicited at the suppression hearing provided sufficiently detailed information that the landlord gave valid consent. We conclude the State failed to establish that the landlord gave valid consent.

In addressing that foundational question, we conclude the State needed two valid consents here: one to enter the house and the one to access and retrieve

the video footage from the landlord's DV-R recorder, which he owned. The burden of proof was on the State to prove that it had both valid consents. One consent cannot cover the other consent.

Notably, the landlord did not testify at the suppression hearing; he only testified at trial. As stated, our analysis is based on the evidence presented at the time of the suppression hearing. Gibson, 318 N.J. Super. at 9. Furthermore, the record does not show that the landlord ever consented to the officers entering the house and retrieving the video from the DV-R recorder. The mere fact that the landlord was at the house for a period of time during the investigation is simply too insufficient to justify a Fourth Amendment liberty intrusion. We decline in this case to "fill in gaps in the records to supply the requisite proofs required of the State under constitutional standards." State v. Wilson, 178 N.J. 7, 17 (2003). The trial court erred by not making a specific finding that the landlord gave the valid consents needed here.

The State failed to proffer testimony at the suppression hearing that proved with any degree of specificity that the landlord consented to the requisite searches. Simpkins testified that he knew the landlord, called him, and obtained his consent over the phone. That testimony failed to establish that the landlord was informed of his right to refuse the consent or the scope of the search the

landlord was giving consent to conduct. Therefore, that evidence did not establish a valid consent. See Hagans, 233 N.J. at 39.

Moreover, David testified he did not speak to the landlord about the consent to search and took Simpkins at his word about what the landlord had said. Christie then proceeded to read a consent to search form aloud to David, which included his right to refuse the search and told him that "this is just a formality." David signed the consent form to search the surveillance camera under the impression that the landlord had already given valid consent.

We thus conclude the State failed to meet its burden at the suppression hearing, and the surveillance footage must be suppressed. Accordingly, we need not address defendant's remaining Fourth Amendment contention that David could not consent to the search because he lacked common or apparent authority raised in Point IB, or the juror issue raised in Point II.

We reverse, vacate defendant's conviction and sentence, and remand for the trial court to arrange for defendant's release. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

17