10 N.J. Super. 73 (1950)
76 A.2d 527
ANNE FRANK, PLAINTIFF-APPELLANT,
v.
JOSEPH FRANK, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 16, 1950.
Decided November 8, 1950.
*76 Before Judges JACOBS, EASTWOOD and BIGELOW.
Mr. Leo C. Zucker argued the cause for the appellant (Mr. Samuel Roessler, attorney).
Mr. John J. Gaffey argued the cause for the respondent (Messrs. Minard, Cooper, Gaffey & Webb, attorneys).
The opinion of the court was delivered by BIGELOW, J.A.D.
The complaint of the appellant wife against her husband, the respondent, embraces three causes of action. The first for separate maintenance; the second for arrearages of alimony due under an interlocutory order of one of the circuit courts of Florida; and the third for money loaned. The Chancery Division gave judgment against her on the first two causes and awarded her $1,200 on the third, in which she claimed $4,000. We will treat the three causes in order.
In September, 1947, appellant and her husband drove from New Jersey to Fort Lauderdale, Florida, where respondent *77 had just purchased a tavern, the Six and Six Bar. Upon arrival at Fort Lauderdale, they rented an apartment but could not have immediate possession and meanwhile they took a room at the Boulevard Hotel. On November 12th, respondent moved to the apartment that they had rented, while appellant remained at the hotel, although respondent asked her to go with him. She asserts that he was guilty of a constructive desertion. Since then the parties have not lived together and respondent has not supported his wife.
The happenings during the two months in Florida preceding the separation, may be gathered from appellant's testimony: Before November 2nd "we had little arguments that didn't amount to anything." The evening of that day, Frank became drunk and decided to "leave the women home and go out stag with Mr. Muller." "We had an argument and he called me names"  vile ones. Frank came home about two or three o'clock in the morning and the name-calling was resumed. Muller had come with him but remained downstairs. So appellant got out of bed, put on a "house coat" and went down to chat with him for a while. In the morning, Frank began quarreling again. "I wanted to call the police and he took the receiver out of my hand and hit me on the chest." Later in the day, appellant consulted a lawyer and instructed him to begin a proceeding for separate maintenance. But it was not until a week later, November 10th, that she swore to the complaint. The papers were served on Frank just before he moved from the hotel to the apartment. After the events of the night of November 2nd, "We weren't on speaking terms." "Did you have quarrels during that period?" "No." They continued to occupy the same room, but according to appellant they forebore sexual intercourse. More remote from the actual separation were the other incidents related by appellant: March 17, 1947; 1944, between Christmas and New Year; and 1941.
The husband has the right, within reasonable limits, to choose the family place of abode and it is his wife's duty to live with him there. Rich v. Rich, 109 N.J. Eq. 216 *78 (E. & A. 1931). Appellant does not assert that the apartment to which her husband moved on November 12th was in any way unsuitable. She refused to accompany him because she was unwilling to continue living with him anywhere. The separation was her act. To put the onus of the separation on respondent, she must prove misconduct by him that would constitute a ground of divorce. Danzi v. Danzi, 142 N.J. Eq. 662 (E. & A. 1948). She specifies extreme cruelty. To succeed in her action, she must show that his conduct was such that her health was endangered or her life rendered so extremely wretched as to incapacitate her to discharge the duties of a wife, or that her husband's conduct, if continued, would bring about these results. Fallon v. Fallon, 111 N.J. Eq. 512 (E. & A. 1932). We agree with the Advisory Master that appellant fails to meet this test.
The respondent, through the years, was frequently drunk, generally rude to his wife; sometimes called such names as whore; on three or four occasions struck her. At times, but not frequently, he neglected or refused to provide her with sufficient money to run the household. But the appellant must have known pretty well what to expect when she married him, for she was then employed in his tavern. Giving full consideration to all the evidence, we do not find respondent guilty of extreme cruelty, or liable for the separate maintenance of appellant.
We turn to her second cause of action. On November 14th, the Circuit Court made an interlocutory order in appellant's suit for support, that defendant pay plaintiff "for her temporary alimony the sum of $75 per week beginning November 15, 1947, until the further order of this court." On December 2, 1948, another order in the cause was signed, adjudging respondent in contempt. These are the orders on which appellant relies.
Congress, implementing the full faith and credit clause of our Constitution, Art. 4, sec. 1, has enacted that the "judicial proceedings" of any court of a state shall have "the same full faith and credit in every court within the *79 United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." 28 U.S.C.A., § 1738 (1950 ed.; see 1940 ed., § 687). A decree for future alimony is entitled to full faith and credit as to past due installments, if the right to them is absolute and vested, even though the decree may be modified prospectively by future orders of the court. But the decree is not considered final and not entitled to credit if the court may retroactively reduce or cancel past due installments. Sistare v. Sistare, 218 U.S. 1, 30 S.Ct. 682 (1910). And in such case an action on it for the accrued alimony cannot be maintained in New Jersey. Kelly v. Kelly, 121 N.J. Eq. 361 (E. & A. 1937). The enforceability in our New Jersey courts of the order for temporary alimony, depends upon the law of Florida. In Duss v. Duss, 111 So. 382, decided in 1927, the Supreme Court of Florida held that an order made in a divorce suit, allowing temporary alimony, is interlocutory in character and remains within the control of the court, at least until final decree, in the absence of an appeal; and that such an order is made by virtue of the general equity power of the court and that the court in its discretion may modify or vacate the order and relieve the husband of the payment of past due installments of alimony. Our own law on the subject is similar. Wilson v. Wilson, 14 N.J. Misc. 33 (Ch. 1935). If the Duss case is still the law of Florida, appellant can maintain no action in New Jersey upon the order for temporary alimony, for her right to the alimony is not absolute or vested.
But appellant urges that the law has been changed by statute, chapter 16780, Florida Laws of 1935. This enactment empowers a circuit court by order to decrease, increase or confirm the amount of separate support, maintenance or alimony provided for in a decree theretofore made. In Van Loon v. Van Loon, 182 So. 205 (Fla. 1938), dealing with permanent alimony, it is said that the statute authorizes amendment of alimony decrees only as to payments not yet due at the date of the application for modification. Appellant *80 argues that since the statute makes a decree for alimony amendable as to future installments, it should be construed to forbid by implication, amendment as to past due installments, and so to make absolute the right to such installments. And appellant would have this implication extend to temporary alimony due under an interlocutory order. Van Loon v. Van Loon holds that past due installments of permanent alimony constitute property rights of which the wife cannot be deprived; but this conclusion springs from common law principles and not from the statute of 1935.
Nothing said in that case, and nothing in the statute, as we understand it, removes accrued temporary alimony from the control of the court or gives the wife a vested right therein. See also Craig v. Craig, 26 So.2d 881 (Fla. 1946).
Even where a decree for alimony is subject to modification retroactively, a judgment for the arrears entered in the court that awarded the alimony, may create a vested right and become the basis of an action in another state. The presumption is that the judgment is not subject to modification and that it should be given full faith and credit. Barber v. Barber, 323 U.S. 77, 65 S.Ct. 137; 157 A.L.R. 164 (1944); Griffin v. Griffin, 327 U.S. 220, 66 S.Ct. 556 (1945). As those cases disclose, a decree made on order to show cause in the separate maintenance suit may be such a judgment.
Should the order made in the contempt proceeding be considered a final judgment for accrued alimony? It recites the proceedings and that defendant has failed to comply with the order of November 14, 1947,
"And that said defendant, Joseph Frank, on November 18th, 1948, is in arrearage in the payment of said $75.00 per week in the total sum of $3,825.00 and having failed to show any reason whatever at said hearing for his failure to comply with said order and the Court being fully advised in the premises, it is, ORDERED, ADJUDGED AND DECREED by the Court that the said Joseph Frank be, and he is hereby adjudged in contempt of Court for his failure to comply with said order of this court entered on the 14th day of November 1947; it is further, ORDERED, ADJUDGED AND DECREED that the said Joseph Frank be, and he is hereby granted five days *81 from the date hereof in which to purge himself of contempt by paying to plaintiff's attorneys, Davis & Lockhart, or either of them, for the use of the said plaintiff, Anne Frank, the sum of $3,825.00."
The court further ordered that upon Frank's failure to purge himself of contempt by making the requisite payment within the time limited, he "be confined in jail for a period of 30 days, subject, however, at any time of said period of confinement to be released upon the payment of the said $3,825 and costs accrued incident to the execution of this order."
The instrument on its face does not purport to be a judgment that the plaintiff recover of the defendant a sum certain, or that the defendant pay such a sum to plaintiff; but only an adjudication that the defendant is guilty of contempt. It can be the basis of an action for the sum recited in it, $3,825, only if the entry of the contempt adjudication put an end to the discretionary control by the Florida court of the accrued alimony. If it had that effect, then it gave plaintiff a vested right in $3,825 of accrued alimony, and she may enforce that right in New Jersey. But if the contempt adjudication left the arrears still subject to the control of the court, plaintiff's position in the present action is no stronger than if her husband had not been convicted of contempt. Appellant cites no authorities in support of her thesis that the contempt judgment made absolute her title to the accruals, and we know of none that she might have cited. We perceive no ground for considering that the Florida Circuit Court has lost control over the accrued alimony.
We have examined with care the evidence, and especially the appellant's own testimony with relation to her claim for money loaned or entrusted to respondent. The finding of the Master that only $1,200 was due her is well-founded.
The judgment of the Chancery Division is affirmed. The respondent will pay his wife's costs including a counsel fee of $500.