**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2668-23

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

FARIYD A. GEORGE, a/k/a
FARIYAD A. GEORGE,

     Defendant-Appellant.

_____

Argued April 1, 2025 – Decided May 22, 2025

Before Judges Gooden Brown and Chase.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment Nos. 22-06-1428, 23-09-1764 and 23-09-1765.

Rachel Glanz, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Rachel Glanz, and Austin J. Howard, Assistant Deputy Public Defender, of counsel and on the briefs).

Thomas R. Clark, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney

General, attorney; Thomas R. Clark, of counsel and on the brief).

PER CURIAM

After the trial judge denied his motion to suppress a handgun seized without a warrant, defendant Fariyd George entered a negotiated guilty plea to second-degree aggravated assault and second-degree certain persons not to have weapons.  He was sentenced to an aggregate term of five years in prison, with a five-year period of parole ineligibility pursuant to the Graves Act, N.J.S.A. 2C:43-6(c).  Although defendant was charged in three separate indictments, the handgun formed the evidential basis for the charges contained in two of the indictments and was seized pursuant to a consent to search obtained from a third party to whom defendant had entrusted the gun.

Defendant now appeals from the denial of his suppression motion,[1] raising the following single point for our consideration:

> SUPPRESSION IS REQUIRED BECAUSE THE STATE FAILED TO PROVE THAT THE THIRD PARTY VOLUNTARILY CONSENTED DURING A SECRET CUSTODIAL INTERROGATION THAT THE MOTION COURT ENTIRELY IGNORED.

---

[1]  See R. 3:5-7(d) (authorizing appellate review of the denial of a suppression motion notwithstanding the entry of a judgment of conviction by way of a guilty plea).

A-2668-23

Based on our review of the record and the applicable legal principles, we affirm.

I.

At the suppression hearing, the State produced one witness, Newark police officer Yasilis Ortiz. Ortiz testified that on July 5, 2020, at about 1:00 a.m., she and other officers responded to a call of shots fired in the courtyard of a housing complex. Upon arrival, she found defendant suffering from an injury to his foot. Defendant was not forthcoming about the cause of his injury and attributed it to "fireworks." After defendant was transported to the hospital and police learned that defendant had sustained a gunshot wound, officers secured the scene and began to investigate.

According to Ortiz, during the investigation, officers reviewed surveillance footage of the area and observed a woman who had been near defendant place a handgun "on the windowsill" of an apartment in another building in the complex. Prior to leaving the gun on the windowsill, the woman had knocked on the door of the apartment but received no response. Later, the woman returned and retrieved the gun from the windowsill. She then went back to her own apartment. Police encountered the woman, who was later identified

3

as Amaryllis Gross, in the courtyard and administered her <u>Miranda</u>[2] warnings. Upon questioning, Amaryllis told police that defendant had given her the handgun, which was still in her possession at her daughter's apartment where she was staying.[3]

The officers then proceeded to Amaryllis's apartment.[4] Upon arrival, Ortiz asked Amaryllis and her daughter, Rasheedah Gross, who leased the apartment, for consent to search the apartment. After ascertaining that they "understood the English language," Ortiz read the consent to search form aloud to Rasheedah and Amaryllis, informing them of their rights, including their right not to have a search conducted without police obtaining a search warrant and their right to refuse to consent. Both women signed the form after confirming that they understood exactly what was read to them.

Ortiz testified that to ensure that they understood their rights, she asked both women their highest level of education. Ortiz also testified that no threats

---

[2] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

[3] Amaryllis Gross and her daughter, Rasheedah Gross, are both discussed in this opinion. Because of the common surname, we refer to both by their first names and intend no disrespect.

[4] On cross-examination, Ortiz acknowledged that other officers interacted with Amaryllis outside of Ortiz's presence.

A-2668-23

or promises were made to get the women to sign the form. After Amaryllis told police where the gun was located, police seized the gun from the nightstand of her bedroom. Ortiz confirmed that the gun seized looked like the gun she had seen in the surveillance footage.

The executed consent to search form and Ortiz's body worn camera (BWC) footage recording her interactions with the women were admitted into evidence for purposes of the hearing. The BWC footage captured Ortiz reading the consent form aloud to the women. On the footage, when asked her highest level of education, Rasheedah responded she had "some college." On cross-examination, Ortiz acknowledged that while she was reading the consent form to the women, the footage showed Amaryllis walking away and bending over.

The BWC footage showed earlier interactions between Amaryllis and law enforcement. When Ortiz first approached defendant, a woman later identified as Amaryllis is heard telling police she had called 9-1-1 at defendant's request because he had been shot in the foot. During a second encounter, Amaryllis stated she was from North Carolina but was staying with her daughter, who resided in one of the apartment buildings. At Ortiz's request, Amaryllis provided her cell phone number.

During a third encounter, about three hours after the initial dispatch call, Ortiz handcuffed Amaryllis who was detained, placed in a patrol car, and administered <u>Miranda</u> warnings. Prior to the third encounter, law enforcement had become aware of the surveillance footage depicting Amaryllis placing the handgun on the windowsill. Another officer, Sergeant Ricardo Velez, told Amaryllis about the surveillance footage and explained that she was not in trouble unless she lied. Amaryllis responded that defendant had asked her to deliver a bag to an apartment but there was no response at the apartment. Once she realized the bag contained a handgun, she placed it on the windowsill but returned to retrieve it and took it back to her own apartment. She verbally agreed to a search of her apartment to locate the gun. Shortly thereafter, Ortiz removed Amaryllis's handcuffs and they proceeded to her apartment.

Defendant was subsequently charged in two separate Essex County indictments arising from the July 5, 2020 seizure of the handgun. Indictment No. 22-06-1428 charged defendant with second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b), and Indictment No. 23-09-1765 charged defendant with second-degree certain persons not to possess a weapon, N.J.S.A.

6

2C:39-7(b)(1).[5]  A third indictment, Indictment No. 23-09-1764, charged defendant with seven offenses arising out of events that occurred on June 28, 2023, including one count of second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1).

Following the suppression hearing, the judge entered an order on August 15, 2023, denying defendant's motion.  In an accompanying written opinion, first, the judge credited Ortiz's testimony based on the officer's "appearance and demeanor," manner of testifying, "interest in the outcome of th[e] motion," "means of obtaining knowledge of the facts," "understanding of the facts," and "ability to reason and recollect."  The judge further found that "the investigative reports, [BWC] footage, and items in evidence" all "corroborated [Ortiz's] testimony."

Next, after providing a comprehensive overview of the applicable legal principles, the judge found the State met its burden of proving that Amaryllis and Rasheedah "voluntarily and knowingly consented to the search of their apartment."  Citing State v. Hagans, 233 N.J. 30 (2018), the judge found that

---

[5]  The indictment was amended to reflect the July 5, 2020 offense date and the correct weapon.

"[n]one of the factors that would potentially indicate coerced consent are present in this matter."

The judge explained that

> [d]espite comprehending [their constitutional right to refuse a search of the premises], both individuals opted to grant written consent for the search. There is no indication of any lack of understanding on the part of [Amaryllis] and her daughter regarding their right to refuse, and there is also no evidence pointing to any coercion that could have influenced their decision to provide consent. Both acknowledged that they understood their right to refuse the search.

The judge rejected defendant's contention "that the absence of [Amaryllis's] testimony regarding her consent implie[d] the State's failure to fulfill its obligation." Rather, "any assertion of coercion by law enforcement" was "discredit[ed]" by evidence in the record, including the signed consent to search form coupled with the BWC footage revealing both women "receiving information about their right to decline" the search.

Likewise, the judge rejected defendant's suggestion that "their lack of attentiveness" during the interaction "substantiate[d] the claim that their consent was involuntary." Instead, the judge found that the women "were in close proximity to . . . Ortiz and thus able to hear [the officer] read the form to them." Further, Rasheedah stated she had attended some college, "implying she

understood the form and the words uttered by . . . Ortiz,"[6] and Amaryllis

"directed law enforcement" to the exact location of the gun.

The judge expounded:

> Throughout the search, neither [Amaryllis] nor her daughter expressed a desire for the search to halt or any reservations about their decision to provide consent. Upon initial contact in the courtyard, [Amaryllis] readily disclosed that the gun was in her apartment near the television. There is no evidence suggesting that [Amaryllis] was compelled to disclose this information, nor any sign of her unwillingness to cooperate with law enforcement. Furthermore, it seemed clear that there was mutual comprehension that law enforcement was seeking consent to search a specific area of the apartment, namely her bedroom, with the sole purpose of locating the handgun. Once the handgun was found in the area indicated by [Amaryllis], law enforcement concluded the search.

Defendant subsequently pled guilty to second-degree aggravated assault as charged in Indictment No. 23-09-1764, and second-degree certain persons as charged in Indictment No. 23-09-1765. After he was sentenced, all remaining charges were dismissed in accordance with the plea agreement. This appeal followed.

---

[6] The judge mistakenly attributed the statement regarding attendance at college to Amaryllis.

II.

"[O]ur standard of review on a motion to suppress is deferential." State v. Wilson, 478 N.J. Super. 564, 576 (App. Div. 2024) (quoting State v. Nyema, 249 N.J. 509, 526 (2022)). We will "uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Ahmad, 246 N.J. 592, 609 (2021) (quoting State v. Elders, 192 N.J. 224, 243 (2007)). "We defer to those findings of fact because they 'are substantially influenced by [an] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. Hubbard, 222 N.J. 249, 262 (2015) (alteration in original) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). "[E]ven factfindings based solely on video . . . evidence" are entitled to deference. State v. S.S., 229 N.J. 360, 379 (2017). "In contrast, the trial court's interpretation of the law and the legal 'consequences that flow from established facts' are reviewed de novo." Wilson, 478 N.J. Super. at 576 (quoting State v. Gamble, 218 N.J. 412, 425 (2014)).

Turning to the substantive legal principles, "[b]oth the United States Constitution and the New Jersey Constitution guarantee an individual's right to be secure against unreasonable searches or seizures." State v. Williams, 461

10

N.J. Super. 80, 94 (App. Div. 2019) (quoting State v. Minitee, 210 N.J. 307, 318 (2012)). "A warrantless search is presumed invalid unless it falls within one of the recognized exceptions to the warrant requirement." Gamble, 218 N.J. at 425 (quoting State v. Cooke, 163 N.J. 657, 664 (2000), overruled on other grounds by State v. Witt, 223 N.J. 409 (2015)). "[T]he State bears the burden of demonstrating by a preponderance of the evidence that an exception to the warrant requirement applies." State v. Manning, 240 N.J. 308, 329 (2020).

"A search conducted pursuant to consent is a well-established exception to the constitutional requirement that police first secure a warrant based on probable cause before executing a search of a home." State v. Domicz, 188 N.J. 285, 305 (2006). Consent to conduct a warrantless search must be given "knowingly and voluntarily." Elders, 192 N.J. at 236. "The burden of proof is on the State to establish by clear and positive testimony that the consent was so given." State v Shaw, 237 N.J. 588, 618-19 (2019) (quoting State v. King, 44 N.J. 346, 352 (1965)).

"To be voluntary[,] the consent must be 'unequivocal and specific' and 'freely and intelligently given.'" King, 44 N.J. at 352 (quoting Judd v. United States, 190 F.2d 649, 651 (D.C. Cir. 1951)). To satisfy that requirement, the State must prove "'that the individual giving consent knew that he or she "had a

11

choice in the matter."'" Hagans, 233 N.J. at 39 (quoting State v. Carty, 170 N.J. 632, 639, modified, 174 N.J. 351 (2002)). Thus, "the consenting party must know that he[ or she] has the right to decline consent." State v. Birkenmeier, 185 N.J. 552, 563-64 (2006) (citing State v. Johnson, 68 N.J. 349, 353-54 (1975)).

"Consent is . . . a factual question to be determined from the relevant circumstances." State v. Koedatich, 112 N.J. 225, 264 (1988). In King, our Supreme Court delineated the following factors for courts to use in determining whether an individual's consent to search was coerced:

> (1) that consent was made by an individual already arrested; (2) that consent was obtained despite a denial of guilt; (3) that consent was obtained only after the accused had refused initial requests for consent to search; (4) that consent was given where the subsequent search resulted in a seizure of contraband which the accused must have known would be discovered; [and] (5) that consent was given while the defendant was handcuffed.
>
> [44 N.J. at 352-53 (citations omitted).]

King likewise outlined factors indicating voluntariness of consent, including: "(1) that consent was given where the accused had reason to believe that the police would find no contraband; (2) that the defendant admitted . . .

guilt before consent; [and] (3) that the defendant affirmatively assisted the police officers." Id. at 353 (citations omitted).

> The [King] Court emphasized that those factors were not commandments, but "guideposts to aid a trial judge in arriving at [a] conclusion." The Court cautioned that "the existence or absence of one or more of the factors mentioned above may be of great significance in the circumstances of one case, yet be of slight significance in another." Indeed, the Court explained, "many decisions have sustained a finding that consent was voluntarily given even though the consent was obtained under the authority of the badge or after the accused had been arrested." Voluntariness depends on "the totality of the particular circumstances of the case" with each case "necessarily depend[ing] upon its own facts."
>
> [Hagans, 233 N.J. at 40 (third alteration in original) (citations omitted) (quoting King, 44 N.J. at 353).]

The Hagans Court further explained that advances in technology since King was decided, including video footage of police encounters, "are precisely why the King Court factors are guideposts rather than rigid absolute authority." Id. at 43. As such, despite the presence of some of King's "potentially coercive" factors, including the fact that the consenting party was detained, administered Miranda warnings, handcuffed, placed in the backseat of a patrol car, questioned, and threatened with a search warrant when she initially refused to consent, in Hagans, the Court nonetheless found "sufficient credible evidence

13

support[ing] the trial court's determination that . . . consent was voluntary under the totality of the circumstances," in part because of "the capacity of video to bring clarity to a challenged proceeding." Id. at 34-35, 42-43. "Because determining 'whether consent was voluntarily given is a factual issue,' it is 'to be decided by the trial judge; and the appellate court should reverse only when it finds that determination to be clearly erroneous.'" Williams, 461 N.J. Super. at 104 (quoting King, 44 N.J. at 354).

Applying these principles, we discern no basis to disturb the judge's findings that the consent to search Amaryllis's bedroom in Rasheedah's apartment was knowing, voluntary, and legally obtained. The judge's findings are supported by the record, particularly the BWC footage of the police interactions with the women and the police reports in conjunction with Ortiz's credible testimony. Significantly, even without Amaryllis's consent, Rasheedah's consent was enough for police to conduct the warrantless search of Amaryllis's bedroom because it was Rasheedah's apartment.

"Authority to consent to search a particular area of a home turns on common usage . . . ." State v. Cushing, 226 N.J. 187, 201 (2016). New Jersey "recognizes that there may be dual control over a particular location," and "[i]n such a case either party has the authority to grant the right to search at that

14

location." State v. Santana, 215 N.J. Super. 63, 69 (App. Div. 1987); see State v. Coles, 218 N.J. 322, 340 (2014) ("Our state law on consent searches . . . has recognized a third party's ability to consent to a search when the consenter has common authority for most purposes over the searched space."); State v. Maristany, 133 N.J. 299, 305 (1993) (noting that consent may come "from a third party who possesses common authority over the property"); Fernandez v. California, 571 U.S. 292, 294 (2014) ("Our cases firmly establish that police officers may search jointly occupied premises if one of the occupants consents . . . [unless] another occupant is present and objects to the search." (footnote omitted)). "The question . . . is 'whether the officer's belief that the third party had the authority to consent was objectively reasonable in view of the facts and circumstances known at the time of the search.'" State v. Marcellus, 472 N.J. Super. 269, 275 (App. Div. 2022) (quoting State v. Suazo, 133 N.J. 315, 320 (1993)).

Here, the facts objectively showed that Rasheedah and Amaryllis each had control over the bedroom where the gun was found. It is undisputed that the apartment was leased by Rasheedah while Amaryllis, who resided out of state, was staying at the apartment. Thus, either party had authority to consent to the search of the bedroom, Santana, 215 N.J. Super. at 69, and the record amply

15

supports the judge's finding that Rasheedah's consent was not coerced. Indeed, Rasheedah was never arrested, detained, or even under suspicion for any wrongdoing. Instead, Rasheedah voluntarily consented to the search with full knowledge and understanding of her choice in the matter and her right to refuse.

The fact that Amaryllis was also present when Rasheedah consented and did not object to the search of her bedroom further supports the legality of Rasheedah's consent. Even if we accepted defendant's contention that Rasheedah was subjected to coercive pressure by virtue of Amaryllis's detention, the arrest of another in the presence of the consenting party does not automatically invalidate the voluntariness of the consent. See Hagans, 233 N.J. at 34-35, 42-43 (upholding validity of driver's consent to search vehicle despite driver being handcuffed and detained and witnessing passenger's arrest); United States v. Drayton, 536 U.S. 194, 205-08 (2002) (rejecting argument that individual could not validly consent after traveling companion was arrested).

As for Amaryllis's consent, despite the presence of several "potentially coercive" factors during her encounter with police, we are satisfied that based on the totality of the circumstances, Amaryllis also voluntarily consented to the search of her bedroom. Hagans, 233 N.J. at 42-43. Similar to Hagans, when police sought Amaryllis's consent, she had been detained, administered Miranda

warnings, handcuffed, placed in the back of a squad car, questioned, and told she would only be in trouble if she lied because police had video proof of her possession of defendant's gun. Id. at 34-35. Notwithstanding these "potentially coercive" factors, the police actions "were not menacing, harassing, or deceptive" and did not obviate the voluntariness of Amaryllis's ultimate consent. Id. at 41, 43.

Critically, by the time Amaryllis signed the consent to search form, she was in the apartment with her daughter, unrestrained, and advised of her options, including her right to refuse consent, thereby dissipating any taint from the prior detention. In fact, Amaryllis was so calm and "at ease" during the interaction that she walked away while Ortiz was reading the consent form. Id. at 41. As the custodian of defendant's property, Amaryllis was unwittingly involved by defendant in his crime. By voluntarily consenting to the search of her bedroom, Amaryllis exercised her right "to exculpate [herself] promptly and voluntarily by disclosing the property and explaining [her] connection with it to government agents." United States v. Diggs, 544 F.2d 116, 120-21 (3d Cir. 1976). In sum, we are satisfied that sufficient credible evidence supports the judge's determination that Rasheedah's and Amaryllis's consent was voluntary under the totality of the circumstances and that the judge properly denied defendant's

17

motion to suppress.[7]   Although not expressly articulated by the judge, the potentially coercive factors present in the record do not tip the scales in defendant's favor.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

---

[7] We decline to consider the State's contention that defendant lacked an expectation of privacy in Rasheedah's apartment and thus had no standing to challenge the search.  This argument was not raised in the trial court and is raised for the first time on appeal.  See State v. Legette, 227 N.J. 460, 467 n.1 (2017) (declining to consider an argument "the State raised . . . for the first time on appeal") (citing State v. Robinson, 200 N.J. 1, 20 (2009)).

A-2668-23